# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| United States of America ex rel. <br> MICHAEL THOMAS, <br><br> Petitioner, <br><br> vs. <br><br> DONALD GAETZ, Warden, <br> Pinckneyville Correctional Center,[1] <br><br> Respondent. | Case No. 11 C 7743 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

An Illinois jury convicted Michael Thomas of first degree murder in connection with the death of Keith Stalker. The trial judge sentenced him to a prison term of forty years. Thomas has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

In his petition, Thomas alleges seven claims. Respondent contends that all but one of these claims are procedurally defaulted and alternatively that all of Thomas's claims lack merit. Thomas has also asked the Court to order respondent to produce transcripts of certain court proceedings. Respondent contends that there were no substantive proceedings held on the dates cited by Thomas and argues, in the alternative, that the Court should deny Thomas's request because the claims that these transcripts allegedly support are procedurally defaulted.

---

[1] Donald Gaetz is substituted as the respondent in this case pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases.

In this decision, the Court deals with, and only with, respondent's contention that certain of Thomas's claims are procedurally barred.

## Background

**A.     State court proceedings**

**1.     The stabbing and Thomas's trial**

Thomas admits that he stabbed Stalker near the corner of Magnolia and Wilson Avenues on November 23, 1996. He contends that he acted in self-defense and in defense of others or, in the alternative, that he should have been convicted of second-degree murder on a theory that he unreasonably believed that he was acting in self-defense and defense of others.

Thomas—then a member of the Black P-Stone Nation street gang—was selling crack cocaine on the street outside of 4541 North Magnolia Avenue on November 23 with Tory Jackson, Tyrone Curry, and Solomon Monroe, all fellow gang members. Stalker—who belonged to the Gaylord Nation street gang—was also in the neighborhood that day. Stalker frequently bought cocaine from the group, and he would occasionally bring other drug users to buy from them, in exchange for which the sellers would give Stalker free cocaine.

Around 2 a.m. on November 23, two other members of the Gaylord Nation gang drove into the area in a red GMC Blazer. It is undisputed that at some point between 2 a.m. and 4 a.m., the two men stole approximately $150 worth of cocaine from Black P-Stone Nation gang members. Jackson testified at Thomas's trial that he was the one responsible for selling the drugs that day. Jackson stated that sometime before 3 a.m., the two unidentified men pulled up outside of the porch where he was sitting with

2

Stalker. One of the men got out of the car and talked with Stalker about buying an "eight-ball" (1/8 of an ounce) of cocaine, which Jackson agreed to sell for $150. Jackson instructed the men to drive around the block while he prepared the drugs for sale. Jackson testified that Monroe gave him the cocaine as the men drove around the block. The men returned a few minutes later and stopped the Blazer in the middle of the street. As Jackson reached through the passenger window to show them the cocaine, the passenger yelled to the driver to drive away. Jackson stated that he hung onto the car, trying to recover the drugs, until the men ran him into a pole approximately two blocks away. According to Jackson, Stalker was not involved in the theft.

Jackson testified that after he regained consciousness, he walked back to 4541 North Magnolia, where he met up with Thomas. Jackson stated that Thomas punched him in the eye as punishment for losing the drugs, and was "stabbing the dirt with his knife." Resp't Ex. Q at F-40. Thomas and Jackson walked out into the street, where they saw Curry and Monroe with Stalker. Curry and Monroe then began punching Stalker and beating him with a wooden 2x4 they had taken out of a dumpster. According to Jackson, Thomas walked toward the group, took out a knife, and stabbed Stalker. Jackson testified that during the entire incident, Stalker never fought back and never had a weapon in his hands.

At his trial, Thomas testified on his own behalf, recounting a different version of events. Thomas did not dispute that around 2 a.m., the two unknown Gaylord Nation gang members drove up to 4541 North Magnolia. According to Thomas, however, Stalker then got into the car with the two men, and they drove away. They returned about thirty minutes later, got out of the car, and asked Jackson if they could "buy some

3

drugs." Resp't Ex. S at F-270. Thomas testified that he and Curry advised Jackson not to sell to the men because they did not know them very well. Thomas contends that when Jackson refused to sell them cocaine, Stalker and the two other men left the area.

According to Thomas, the Blazer returned approximately fifteen minutes later. The three men again got out of the Blazer and asked if they could purchase an eight-ball of cocaine. Thomas and Curry again advised Jackson not to sell to them, but Jackson disagreed, packaged the cocaine, and gave it to one of the men for inspection. Instead of paying, the man with the cocaine "swung on" Jackson, and the three men ran for the car. *Id.* at F-273. Jackson ran after the man with the drugs and tackled him to the ground. According to Thomas, Stalker joined the fight against Jackson, and Monroe jumped in to help defend his fellow gang member. Thomas contends that it was Stalker who grabbed the wooden 2x4 from the dumpster and hit Monroe with it several times. Thomas then joined the fight, running toward Stalker and punching him in the stomach. Stalker turned and swung the board at Thomas's head but missed. Thomas grabbed Stalker by the waist, and Stalker began choking him. In response, Thomas grabbed the knife he had stored in the front pocket of his sweatshirt and stabbed Stalker in the stomach.

Thomas testified that while he and Monroe were fighting with Stalker, the man with the cocaine freed himself from Jackson and ran toward the Blazer. Jackson gave chase, but the man successfully reached the car (the driver was already inside), and the two sped away in the Blazer, with Jackson hanging onto the passenger side door. After the stabbing, Thomas and Monroe jumped into Monroe's car, drove to the alley to pick up Jackson and Curry, and drove south to the house of Thomas's girlfriend, Sonia

4

McKinstry, on Aberdeen Street between 52nd and 53rd Streets. Jackson and Monroe left the area soon afterward, but Thomas and Curry stayed at McKinstry's apartment until they were arrested three days later.

On November 26, 1996, Jackson returned to the corner of Wilson and Magnolia, where police arrested him in connection with Stalker's death. After questioning him about his participation in the incident, Jackson led police to McKinstry's house, where they arrested both Thomas and Curry. After his arrest, Thomas was interviewed multiple times by the police and an assistant state's attorney. At 2 a.m. the next day, Thomas signed a statement admitting that he stabbed Stalker after seeing Curry and Monroe beating Stalker up because he was getting "angrier about what the guys in the Blazer had done and thought Keith [Stalker] shared the blame for it." Resp't Ex. R at F-237. Thomas also stated that Stalker did not have anything in his hands when Thomas stabbed him. Thomas was charged with first-degree murder. Curry, Monroe, and Jackson were also charged in connection with Stalker's death.

The trial judge appointed a public defender to represent Thomas. Thomas moved to quash his arrest and suppress his statement to the authorities. On January 8, 1998, the trial judge held a pretrial hearing on the motions. Resp't Ex. P at A-1–93. Thomas and Curry both testified, as did two of the officers involved in Thomas's arrest—Detectives Philip Mannion and Dennis Gray. Because McKinstry, who had been subpoenaed to testify, was not available that day, the court continued the matter. McKinstry testified on May 12, 1998, and the court denied Thomas's motions on July 15, 1998.

Thomas's jury trial began on January 20, 1999. In its case-in-chief, the

prosecution called Jackson to testify. Jackson had recently been acquitted of the murder in a separate trial. Detective Mannion and Assistant States' Attorney Karen O'Malley also testified, recounting the circumstances surrounding Thomas's signed statement. The parties stipulated to the autopsy report, which the prosecution read into evidence. In it, Dr. Aldon Fusaro, a deputy medical examiner at the Cook County Medical Examiner's Office, concluded that Stalker died of a stab wound to the abdomen and that blunt force to his head was a contributing factor. Dr. Fusaro also noted in the report that Stalker had "[c]ontusions over the knuckles of the right thumb and index finger." Ex. R at F-203.

After the prosecution rested, Thomas took the stand in his own defense, giving his account of the circumstances that led him to stab Stalker. Thomas denied ever reading the statement that O'Malley wrote for him to sign, and he contended that the written statement inaccurately reflected what he told Mannion and O'Malley in his post-arrest interviews. In rebuttal, O'Malley challenged Thomas's testimony that the statement was inaccurate, and she testified that Thomas never told her that Stalker attacked him that evening. Thomas's attorney conceded in closing argument that Thomas stabbed Stalker but argued that he did so only in defense of himself and Monroe, or alternatively, that Thomas unreasonably believed he was doing so in defense of himself and Monroe and was therefore guilty of second degree murder rather than first-degree murder. On January 21, the jury found Thomas guilty of first degree murder.

Thomas appealed his conviction to the Illinois Appellate Court on four grounds, none of which he has included in his habeas corpus petition before this Court. The

6

court affirmed his conviction on November 15, 2000, and the Illinois Supreme Court later denied Thomas's *pro se* petition for leave to appeal (PLA).

### 2. State post-conviction proceedings

Thomas filed a *pro se* petition for post-conviction relief in the Circuit Court of Cook County on September 25, 2001. In the petition, Thomas raised the following claims:

- The prosecutor violated his right to due process by knowingly eliciting false testimony from Jackson.
- He was denied due process when the prosecutor failed to disclose an interview with Steven Myvett—a cocaine user who had been in the area on the night of Stalker's death—in which Myvett told prosecutors about material facts that corroborated Thomas's defense and impeached Jackson's testimony.
- His trial counsel rendered ineffective assistance by failing to investigate or call witnesses on his behalf.
- His appellate counsel was unconstitutionally ineffective for failing to argue trial counsel's ineffectiveness and the prosecutor's knowing use of false testimony on direct appeal.

In December 2001, the state trial court dismissed Thomas's petition upon initial review as "patently without merit." Resp't Ex. F at C-35.

The Illinois Appellate Court reversed and remanded. The court found that Thomas's petition "state[d] the gist of claims of constitutional deprivations in its allegations that the prosecution withheld favorable evidence and that Thomas received

ineffective assistance from his trial counsel." Resp't Ex. E at 1. The court explained that these claims adequately alleged constitutional deficiencies and that summary dismissal was therefore improper. *Id.* at 5. The Illinois Supreme Court later denied the state's PLA.

On remand, Thomas timely filed a *pro se* amended post-conviction petition. Thomas repeated the claims from his first petition and added five new claims. Among them was a claim that the prosecutor and the trial court had destroyed certain transcripts from Thomas's pre-trial hearing that he alleged contained favorable testimony by the arresting officers and replaced them with new contradictory testimony. Specifically, Thomas contended that each officer's original testimony conflicted with the other officers' versions of events and conceded several errors in arresting Thomas. After hearing this testimony, Thomas contended, the court "ordered the transcription to be taken 'off the record' or destroyed," and allowed the officers to re-testify about the circumstances surrounding Thomas's arrest. Resp't Ex. U at C-162. Thomas also included a new claim that trial counsel was constitutionally ineffective for failing to challenge the court's purported action or preserve the matter for appellate review.

On May 27, 2008, the trial court granted the state's motion to dismiss the amended petition. The court addressed only two of the grounds that Thomas raised in his petition: (1) Thomas's claim that the trial court erased testimony from his pre-trial hearing, and ordered the officers to re-testify; and (2) Thomas's claim that trial counsel was constitutionally ineffective when she failed to investigate and call Myvett and Fusaro as witnesses on Thomas's behalf. The court did not acknowledge any of Thomas's other claims. The court found that Thomas had waived both of these claims

by failing to raise them at trial or on direct appeal and that even if the claims were not procedurally barred, they lacked merit.

Thomas timely appealed to the Illinois Appellate Court. The Office of the State Appellate Defender was appointed to represent him. Appointed counsel asserted only one argument in her brief, specifically, that Thomas had made a sufficient showing that trial counsel was ineffective for failing to investigate Myvett and Fusaro to warrant an evidentiary hearing.

Even before Thomas's appointed counsel filed a brief on his behalf, Thomas began filing motions with the appellate court, complaining that his attorney was planning waive some of his claims and asking leave to file a supplemental *pro se* brief. *See* Pet'r Ex. 25 at 7. The court denied his request. After appointed counsel filed the one-issue brief on Thomas's behalf, Thomas filed a motion asking to proceed *pro se* and asking the court to strike the appellate defender's brief and set a new briefing schedule or to allow Thomas to file a supplemental brief on his own behalf. Thomas contended that he was "being forced to waive meritorious claims of which the law would require relief," including his claim that the prosecutor withheld favorable evidence and his claim that the trial court destroyed testimony given at his pretrial hearing. Pet'r Ex. 28 at 3. The court also denied this request.

On September 20, 2010, the Illinois Appellate Court affirmed the lower court's dismissal of Thomas's claim of ineffective assistance of trial counsel, finding that "defense counsel clearly made a strategic decision not to call Myvette [*sic*] and Dr. Fusaro as witnesses because their testimony would have harmed more than helped defendant's case. Moreover, defendant was not prejudiced by their absence at trial."

9

Resp't Ex. J at 10. Thomas timely filed a *pro se* PLA, including the additional claims he had sought leave to file at the appellate level. The Illinois Supreme Court denied the PLA.

**B.     Thomas's habeas corpus petition**

On October 31, 2011, Thomas filed a *pro se* habeas corpus petition in this Court. In his petition, Thomas asserts seven claims. First, Thomas claims that his trial counsel rendered ineffective assistance when she failed to investigate or call witnesses that would have corroborated his claim of self-defense. Second, Thomas contends that his due process rights were violated because the state trial court doctored the transcript of the proceedings, removing police officers' purported favorable testimony from the record of a pretrial hearing, and that he was further denied due process because various state courts refused to provide him transcripts of what he says was the original testimony. Third, Thomas claims that his due process rights were violated because the prosecutor knowingly presented the officers' false testimony at the subsequent pretrial hearing. Fourth, Thomas argues that the prosecutor procured testimony from Jackson that she knew was false, in violation of *Napue v. Illinois*, 360 U.S. 264 (1959)—namely, Jackson's claim that he received no leniency in exchange for his testimony at Thomas's trial. Fifth,[2] Thomas alleges that the prosecutor wrongfully withheld her pretrial interview with Myvett, who told her facts that Thomas contends were materially helpful to his defense, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Sixth, Thomas contends that his trial counsel was unconstitutionally ineffective for failing to preserve his missing

---

[2] Thomas lumps together in a single claim the claims that the Court has referred to as his fourth and fifth claims, but the two claims are logically distinct, so the Court lists them separately here.

10

transcript / changed testimony claim because she did not challenge the trial court's striking of the purported favorable testimony at the pretrial hearing and did not object to the subsequent conflicting testimony. Seventh, Thomas argues that the Illinois Appellate Court violated his due process rights when it failed to allow him to proceed *pro se* in his appeal from the second denial of his post-conviction petition.

After respondent filed a response to Thomas's petition, Thomas filed a motion asking the Court to order respondent to produce transcripts from February 18, 1998, March 3, 1998, April 9, 1998, and April 20, 1998. Thomas argues that the transcripts from these dates will support his claims regarding the "doctored" testimony and transcripts.

As indicated above, the Court's present decision addresses only whether Thomas has procedurally defaulted his claims. Thus, because respondent does not argue that Thomas's first claim—ineffective assistance of trial counsel for failing to investigate or call witnesses—is procedurally defaulted, the Court will not address that claim in this decision.

**Discussion**

A federal court cannot reach the merits of a claim in a habeas corpus petition by a state prisoner unless the petitioner has fairly presented the federal claim in state court. 28 U.S.C. § 2254(b)(1)(A); *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999). If, in resolving a petitioner's federal constitutional claim, a state court relies on a state procedural ground that is independent of the federal question and adequate to support the judgment, the claim is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Moore v. Bryant*, 295 F.3d

771, 774 (7th Cir. 2002). If a claim is procedurally defaulted, a federal court will not address its merits unless the petitioner can demonstrate both cause for and prejudice from the default or that a miscarriage of justice will occur if the court fails to address the merits. *See, e.g., Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009).

### A. Claims 2, 3 & 6 - changed testimony / missing transcripts

Three of Thomas's claims (claims 2, 3, and 6) concern favorable testimony by police officers that he contends was transcribed but was later destroyed or simply was not provided to him or his counsel. In claim 2, Thomas alleges that the state courts refused to provide him with the transcripts of this purported testimony. In claim 3, he alleges that the trial judge and the prosecutor caused the transcripts to be destroyed and then used false testimony, contrary to that contained in the missing transcripts, to secure his conviction. In claim 6, Thomas alleges that trial counsel was ineffective for failing to preserve these claims for appeal.

Respondent argues that all of these claims are procedurally defaulted because Thomas failed to raise them on direct appeal or, for that matter, on appeal from the dismissal of his post-conviction petition. In dismissing Thomas's post-conviction petition following remand from the appellate court, the state trial court found that Thomas's claim that the trial judge had destroyed the purported transcript from the allegedly favorable first pretrial hearing and allowed a "do-over" of the hearing was waived because Thomas could have asserted the claim on direct appeal but did not do so. Resp't Ex. V at C439-40 (citing *People v. Miller*, 203 Ill. 2d 433, 437, 786 N.E.2d 989, 992 (2002)). The court also decided the transcript-destruction claim on its merits, finding that Thomas had presented no evidence supporting the claim. *Id.* at C440-41.

Thomas contends that he has cause for the default of these claims on direct appeal. First, he asserts in claim 6 that his trial counsel rendered ineffective assistance by failing to preserve the changed evidence / missing transcript claims for purposes of appeal. Second, he contends in his reply brief filed in the present case that his counsel on direct appeal was unable to raise the claims. Because these contentions overlap to some extent with the merits of Thomas's claims 2 and 3, the Court will defer consideration of these claims pending review by appointed counsel. The Court notes that it neither credits nor discredits these claims on the merits but instead will leave it to appointed counsel to assess them and determine whether to pursue them and, if so, how to deal with respondent's procedural default arguments.

**B.     Claim 5 - *Brady* claim regarding Steven Myvett**

Thomas's fifth claim is that the prosecutor violated his right to due process, as recognized in *Brady v. Maryland*, when she failed to disclose the contents of an interview that she had with Myvett shortly before trial. Thomas says that in that interview, Myvett gave an account of the crime that corroborated Thomas's claim of self-defense. Thomas first asserted this claim in his first state post-conviction petition. In reversing and remanding the trial court's dismissal of his petition, the appellate court specifically mentioned this claim as "stat[ing] the gist of [a] claim[ ] of constitutional deprivation[ ]." Resp't Ex. E at 1.

Following remand, the state trial court did not directly address this claim. The court did, however, deny Thomas's amended post-conviction petition. This means that the trial court either overlooked that the claim was pending or denied it on the merits *sub silentio*.

Thomas's appellate counsel did not include the claim in Thomas's appeal to the Illinois Appellate Court following the trial court's second dismissal of his post-conviction petition. Respondent contends that this omission amounts to a procedural default of the claim.

Thomas presented his *Brady* claim to the Illinois Appellate Court when he moved to discharge his appointed counsel and proceed *pro se*. Although respondent correctly contends that Thomas did not include with his motion a *pro se* supplemental brief, he did alert the appellate court to the basic substance and federal nature of his claim when he described it as a *Brady* claim and explained the factual basis for the claim. *Cf. Baldwin*, 541 U.S. at 32 ("[A] state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material . . . that does so."). In addition, appellate counsel's brief gave more detail about the claim in its discussion of the procedural posture of the case. Specifically, the brief included a detailed description of Myvett's affidavit that Thomas had secured in support of his *Brady* claim.

The appellate court summarily denied Thomas's motion to proceed *pro se*, without explanation. The court's failure to explain its ruling may be sufficient without more to require rejection of respondent's procedural default argument regarding the *Brady* claim concerning Myvett. *See Pole v. Randolph*, 570 F.3d 922, 937 (7th Cir. 2009) ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." (internal

quotation marks omitted)). That aside, the Court finds that Thomas adequately presented his claim to the state courts. Thomas vigorously sought to present this claim (along with others) to the appellate court, asking the court to strike his appellate counsel's brief and set a new briefing schedule, or alternatively to allow him to submit a supplemental brief asserting his *Brady* claim. *See Kizer v. Uchtman*, 165 Fed. Appx. 465, 468 (7th Cir. 2005) (unpublished) (petitioner fairly presented his claim to the appellate court when he filed a supplemental *pro se* brief); *see also Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) ("A petitioner may satisfy the exhaustion requirement by presenting his federal claim in a *pro se* supplemental brief, even if he has an attorney."). But the appellate court rejected Thomas's request. Thomas cannot be faulted for failing to file a supplemental brief when the appellate court specifically refused him permission to do so. He did his best to present the claim, but he was rebuffed by the state court. The Court also notes that Thomas expressly included his *Brady* claim in the *pro se* PLA that he filed in the Illinois Supreme Court. The Court concludes that the *Brady* claim is not procedurally defaulted.

**C.     Claim 4 - *Napue* claim regarding Tory Jackson**

Thomas's fourth claim is that the prosecutor knowingly presented false testimony by Tory Jackson, in violation of *Napue v. Illinois*. Specifically, Thomas's claim is based on the prosecutor's elicitation from Jackson of testimony denying any leniency from the state in exchange for his testimony against Thomas. Thomas contends that Jackson's attorney, Michael Davis, testified at Curry's bench trial – which was held contemporaneously with Thomas's jury trial – that during Jackson's trial, Davis was "in negotiations with the State at some point for having Mr. Jackson as a witness." Resp't

15

Ex. Q at F-133. Thomas argues that the prosecutor therefore knew that Jackson's testimony during the Thomas trial was false and should have been required to tell the jury about Davis's conflicting testimony. Thomas first asserted this claim in his post-conviction petition.

Respondent contends that Thomas procedurally defaulted this claim by failing to raise it on appeal from the dismissal of his post-conviction petition. Thomas's post-conviction appellate counsel did not include this claim in Thomas's appeal to the Illinois Appellate Court following the trial court's second dismissal of his post-conviction petition. In addition, Thomas made no mention of this claim in his request to proceed *pro se* on appeal, and he did not refer to the claim or its underlying basis in his *pro se* PLA. The Court concludes that Thomas procedurally defaulted the claim. He has offered no cause sufficient to excuse the default. The Court therefore dismisses this claim.

**D.      Claim 7 – denial of right to proceed *pro se* on post-conviction appeal**

Thomas's seventh claim concerns the Illinois Appellate Court's refusal to allow him to proceed *pro se* in his appeal from the trial court's dismissal of his post-conviction petition. Though the Supreme Court has recognized a criminal defendant's constitutional right to proceed *pro se* at trial, Faretta v. California, 422 U.S. 806, 834 (1975), neither it nor the Seventh Circuit has directly addressed whether a state post-conviction petitioner has a federal constitutional right to represent himself on state collateral review of a conviction.

Thomas's petition and reply make it clear, however, that he does not assert this claim as a separate basis for granting habeas corpus relief. Rather, he argues it as a

basis for the Court to address on the merits the claims that Thomas attempted to assert *pro se* on appeal from the denial of his post-conviction petition. The Court will consider the claim for that purpose, not as a separate basis for issuance of a writ of habeas corpus.

**Conclusion**

For the reasons stated above, the Court dismisses petitioner's fourth claim (his *Napue* claim concerning Tory Jackson's testimony) but otherwise declines respondent's request to summarily dismiss certain of petitioner's claims on procedural and state law grounds. The Court will appoint counsel to represent petitioner. The Court denies without prejudice Thomas's motion to produce missing transcripts [docket no. 22] without prejudice to renewal by appointed counsel if counsel believes it appropriate to renew the motion. Finally, Randy Davis is substituted as the respondent in this case.

                                        _____
                                          MATTHEW F. KENNELLY
                                          United States District Judge

Date: January 2, 2013